**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| **BRETT CONNER, JUWAN OVERSHOWN, DIANE EDWARDS, STEPHEN FOLLETT, RODERIC WOODS, JOHN CRIST, CHRIS HARRIMAN,** and **TYRONE GIBBS,** individually and on behalf of all others similarly situated, | Case No. 3:25-cv-945-WWB-LLL (Lead Case) |
| | |
| Plaintiffs, | **CIVIL ACTION** |
| | |
| v. | |
| | |
| **CPAP MEDICAL SUPPLIES AND SERVICES INC.,** | |
| | |
| Defendant. | |

**DEFENDANT CPAP MEDICAL SUPPLIES AND SERVICES, INC.'S
MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

Defendant CPAP Medical Supplies and Services, Inc. ("**CPAP**"), moves to dismiss Plaintiffs' Consolidated Class Action Complaint ("**Complaint**"; EFC 36) under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectively, for (**1**) lack of standing, and thus subject matter jurisdiction, and (**2**) failure to state a claim.

As for Article III standing, each of the eight named Plaintiffs fails to plausibly allege an injury in fact. Six allege no actual misuse whatsoever, nor any risk of future harm that is either clearly impending or at a substantial risk of occurring. The other two allege only single instances of purported misuse, each of which is facially conclusory and unambiguously fails under the traceability prong of standing. Indeed, even if the Court were to determine that <u>any</u> Plaintiff has plausibly alleged an injury in fact (which none has), the requirement that such

85100124;1

injury be fairly traceable to the subject breach is fatal to each Plaintiff's claims. To that end, the Complaint effectively concedes a very reasonable likelihood—if not a virtual certainty— that Plaintiffs all already had their data compromised through any one of the thousands of independent breach events occurring in 2023 alone. *See* Complaint ¶ 57 (noting record-breaking data breach incidents and victims in recent years).

Separately, the Complaint fails to state a claim under Rule 12(b)(6). Count I, alleging both negligence and negligence per se, fails to adequately plead either. No negligence claim may lie in the absence of bodily injury or property damage, neither of which is even alleged. *See id*. ¶¶ 157-254. Plaintiffs also fail to adequately plead any private-party data security duty, relying instead on misplaced references to federal statutes which do not provide for any private right of action. *See id*. ¶¶ 276-83. Count I independently fails because Plaintiffs have not plausibly alleged that their purported damages were proximately caused by CPAP's conduct or even resulted from the subject data breach; to the contrary, they underscore the thousands of preceding data breaches—affecting hundreds of millions of victims and billions of records—which could easily have caused their alleged damages. *See id*. ¶¶ 53-58. Count II, alleging breach of implied contract, similarly fails to state a claim because Plaintiffs do not plead facts showing mutual assent to any agreement for the provision of data security; Plaintiffs contracted with CPAP for healthcare services (which they received) and nothing more. Likewise, Count III fails to state a claim for unjust enrichment because no Plaintiff has plausibly alleged s/he conferred on CPAP any monetary benefit or that CPAP knowingly accepted and retained the same. *See id*. ¶¶ 312–321.

For these reasons, as more fully stated below, the Complaint should be dismissed.

I.    <u>**INTRODUCTION AND BACKGROUND**</u>

CPAP is a Florida-based healthcare provider supplying continuous positive airway pressure devices and related services, primarily to active-duty military, veterans, and their families.

Between December 13, 2024, and December 21, 2024, unauthorized third-party criminal actors gained access to CPAP's network and exfiltrated data from its systems (the "**Breach**"). Complaint ¶ 2.[1] Plaintiffs have sued CPAP claiming this cybersecurity incident may have caused them various purported harms arising from their claimed "sensitive personal health information ('PHI') and personal identifiable information ('PII')." Comp. ¶ 1. Plaintiffs filed the Complaint on November 10, 2025, purporting to represent a nationwide class of "[a]ll individuals in the United States whose Private Information may have been compromised in the Data Breach, including all individuals who received a Notice Letter." *Id*. ¶ 256. Plaintiffs allege that they and the putative class members suffered a laundry list of purported harms, including:

> (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (c) actual identity theft and fraud; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of privacy; (h) emotional distress including anxiety and stress; and (i) the continued risk to their sensitive Private Information[.]

---

[1] Plaintiffs' allegations are accepted as true only for purposes of this motion.

Complaint ¶ 14. Based on these supposed harms, Plaintiffs claim "Negligence and Negligence Per Se" (First Cause of Action), "Breach of Implied Contract" (Second Cause of Action), and "Unjust Enrichment" (Third Cause of Action). *Id*. ¶¶ 267-321.

The Complaint's Plaintiff-specific allegations (or lack thereof) effectively group Plaintiffs under one of two categories: (**1**) No-Injury Plaintiffs and (**2**) Implausible Injury Plaintiffs.

**(1) No-Injury Plaintiffs**. The No-Injury Plaintiffs are Brett Connor, Stephen Follett, Roderic Woods, Chris Harriman, Tyrone Gibbs, and Diane Edwards. They do not allege any unexplained charges or account openings. The No-Injury Plaintiffs can only speculate about possible harms; they lack any concrete allegations. For example, each of these plaintiffs repeatedly pleads that he or she "believes" certain private information "has *or will be* sold and disseminated on the dark web, *as that is the modus operandi* of cybercriminals that commit cyber-attacks of this type." *See*, *e.g.*, Complaint ¶¶ 166, 203, 215, 240, 252 (emphasis added). Ms. Edwards further alleges that she received "notifications" that her private information was found on the dark web (*Id*. ¶¶ 187, 192) but no substantive, concrete injury is alleged by any of the No-Injury Plaintiffs.

**(2) Implausible Injury Plaintiffs**. The Implausible Injury Plaintiffs are Juwan Overshown and John Crist. Overshown alleges one unreimbursed bank charge (¶ 175), while Crist alleges a single unauthorized credit inquiry (¶ 224). Neither connects his claimed injury to the Breach.

Plaintiffs' failure to connect any claimed injury to the Breach is underscored by their extensive discussion of data breaches generally. According to Plaintiffs, data breaches are

4

commonplace. They plead that "[i]n *2023*, an all-time high for data compromises occurred, with 3,205 compromises affecting 353,027,892 total victims … represent[ing] a 78 percentage point increase over the previous year and a 72 percentage point hike from the previous all-time high number of compromises (1,860) set in 2021." Complaint ¶ 57 (emphasis added). With the U.S. total population exceeding 340,000,000,[2] Plaintiffs' massive figure for 2023 alone shows that basically everyone in the country has likely been a victim of a data breach .On top of the millions of victims in 2023, Plaintiffs plead there were millions – indeed *billions* – of records stolen even before 2023. *See id*. at ¶¶ 53-58.

Plaintiffs' pleading shows they were probably all victims of some other data breach preceding the Breach. Plaintiffs recognize that around 25% of the total breaches in 2023 alone were of medical or healthcare companies, which Plaintiffs describe as a "gold mine" of information, potentially revealing "a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place." *Id*. ¶ 61. *See also id.* at 32 n.12 (citing article addressing hack involving millions of Social Security numbers). This admission further underscores the same point, which is that the type of data alleged to have been compromised in the Breach could have just as easily been obtained in an independent data breach predating the Breach.

For these and the other reasons more fully detailed below, the Complaint should be dismissed, either without leave to amend or with prejudice.

---

[2] *See* U.S. and World Population Clock (https://www.census.gov/popclock/), last accessed Jan. 18, 2026.

**MEMORANDUM OF LAW**

## I.    STANDARDS OF REVIEW

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). To satisfy the "case" or "controversy" requirement, a plaintiff must have standing to sue. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must show (**1**) an injury in fact that is concrete and particularized, and actual or imminent; (**2**) a causal connection between the injury and the defendant's conduct; and (**3**) redressability of the claimed injury by a favorable court decision. *Perkins v. WellDyneRx, LLC*, No. 8:22-CV-2051-TPB-AEP, 2023 WL 2610157, at *2 (M.D. Fla. Mar. 23, 2023) (citing *Spokeo*, 578 U.S. at 338); *Manning v. Zumpano Patricios, P.A.*, No. 25-CV-23184, 2025 WL 3062563, at *3 (S.D. Fla. Nov. 3, 2025) (citing *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021)), appeal filed, No. 25-14259 (11th Cir. Dec. 4, 2025). Alleged injuries that are hypothetical, conjectural, or speculative do not establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (injury must be "concrete, particularized, and actual or imminent"); *Tsao*, 986 F.3d at 1338-46. Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing these elements by alleging facts that "plausibly" demonstrate ***each*** element. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020).

"[A] plaintiff's proffered harms must be analyzed on a claim-by-claim, harm-by-harm basis." *DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1322 (M.D. Fla. 2024) (Mizelle, J.). To survive a motion to dismiss, a complaint must contain "sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002). Similarly, "'a formulaic recitation of the elements of a cause of action' is not adequate[.]" *Twombly*, 550 U.S. at 555.

## II.    ARGUMENT

### A.    NO PLAINTIFF HAS STANDING

As discussed below, no Plaintiff satisfies the Article III standing requirements of injury in fact or traceability, and therefore each of their claims must be dismissed under Rule 12(b)(1).

### (1)    NO INJURY IN FACT IS PLAUSIBLY PLED BY ANY PLAINTIFF

A plaintiff must allege an "injury in fact that is concrete, particularized, and actual or imminent" to plead the first element of standing. *DiPierro*, 737 F. Supp. 3d at 1321.

In order for an injury to be concrete, it must be real and not abstract. *Trichell*, 964 F.3d at 996. In order for an injury to be particularized, "it must affect the plaintiff in a personal and individual way." *Cooper v. Atl. Credit & Fin. Inc*, 822 F. App'x 951, 953 (11th Cir. 2020). *See also Preisler v. Eastpoint Recovery Group, Inc.*, No. 20-CV-62268-RAR, 2021 WL 2110794, at *4 (S.D. Fla. May 25, 2021) (rejecting standing based on lack of particularity where plaintiff alleged that contract provision was misleading but did not allege he was actually mislead by it).

A harm is "actual" if it has already occurred, but a risk of future harm does not give rise to standing unless the risk is "'sufficiently imminent and substantial.'" *DiPierro*, 737 F. Supp. 3d at 1321-22 (quoting *TransUnion*, 594 U.S. at 435). In other words, when a plaintiff alleges only a threat of future harm, standing will not lie unless that hypothetical harm is either clearly impending or at a substantial risk of occurring. *Tsao*, 986 F.3d at 1339. Moreover, "[e]vidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing" and "without specific evidence of some misuse of class members' data," the burden to plausibly plead a concrete injury in fact "will be difficult to meet." *Id.* at 1344. *See also DiPierro*, 737 F. Supp. 3d at 1323 (requiring allegations of future harm to be "sufficiently substantial and imminent."); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1258 (S.D. Fla. 2024) ("Courts typically require misuse of the data cybercriminals acquire from a data breach because such misuse constitutes both a present injury and a substantial risk of harm in the future.") (internal quotations omitted).

Additionally, the Eleventh Circuit has concluded in the data breach context that "plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" *Tsao*, 986 F.3d at 1344. Thus, where there is no substantial or imminent threat of injury, a plaintiff's efforts to avoid or otherwise mitigate the anticipated injury are insufficient to confer standing. *Manning*, 2025 WL 3062563, at *5.

### (a)    The No-Injury Plaintiffs Plead No Concrete Injury.

The six No-Injury Plaintiffs fail to allege any actual or imminent misuse of their data, nor any concrete harms stemming from actual or imminent misuse. Rather, these plaintiffs

assert only (**a**) a purported increased risk of identity theft, (**b**) time, effort, and expense in mitigating the mere risk of future identity theft, (**c**) anxiety and emotional distress related to the perceived risk of future identity theft, (**d**) an uptick in spam communications, and (**e**) unspecified allegations of dark web activity. These unsubstantiated allegations of harm completely fail to show Article III standing and are discussed in turn below.

_Increased Risk of Future Identity Theft_. Each of the No-Injury Plaintiffs alleges summarily that he or she "is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come." Complaint ¶¶ 164 (Connor), 177, 190 (Edwards), 201 (Follett), 213 (Woods), 238 (Harriman), 250 (Gibbs).

A plaintiff alleging a mere threat of harm does not have Article III standing unless the hypothetical harm alleged is either "certainly impending" or there is a "substantial risk" that it will occur. _Tsao_, 986 F.3d at 1339; _see also Fullwood-Demps v. SouthState Bank, N.A._, No. 6:24-cv-0662-KKM-NHA, 2024 U.S. Dist. LEXIS 129867, at *4 (M.D. Fla. July 23, 2024) ("[A] risk of future harm does not give rise to standing unless the risk is "sufficiently imminent and substantial."); _DiPierro_, 737 F. Supp. 3d at 1321-22 (same); _Perkins_, 2023 WL 2610157, at *2 (plaintiff failed to sufficiently assert any substantial and imminent risk of future harm where he did not allege facts to show the risk was "certainly impending."). Naked assertions that a plaintiff is at an increased or ongoing risk of future identity theft are "'simply not enough.'" _Tsao_, 986 F.3d at 1343 (quoting _Muransky v. Godiva Chocolatier, Inc._, 979 F.3d 917, 933 (11th Cir. 2020)). Here, the No-Injury Plaintiffs offer nothing more than what was rejected as insufficient in _Tsao_, _see_ Complaint ¶¶ 164, 177, 201, 213, 238, 250, thus failing to satisfy the concreteness requirement.

_Time, Effort, and Expense Mitigating Risk of Future Identity Theft_. Each of the No-Injury Plaintiffs alleges (**1**) that the Breach has given rise to an increased risk that he or she will be the victim of **future** identity theft and (**2**) that, based on this perceived risk, he or she has expended time or money to mitigate said perceived risk. Complaint ¶¶ 163 (Connor), 188 (Edwards), 200 (Follett), 212 (Woods), 237 (Harriman), 249 (Gibbs). These allegations of mitigation efforts also fail to meet the requirement of a concrete injury.

It is well established that if an alleged hypothetical harm is not "certainly impending," and, unless there is a substantial risk of it occurring, a plaintiff cannot conjure standing by self-inflicting some direct harm to mitigate said perceived risk. _Clapper_, 568 U.S. at 416; _Tsao_, 986 F.3d at 1339; _Muransky_, 979 F.3d at 931. In _Muransky_, the Eleventh Circuit held that a plaintiff's mitigation costs were insufficient to confer standing because there was no substantial risk of identity theft. _Muransky_, 979 F.3d at 931. Here, too, the No-Injury Plaintiffs attempt to manufacture standing by pointing to harms or burdens they voluntarily incurred in order to mitigate what they perceived as a hypothetical risk of future harm. Absent some indication that the alleged hypothetical harm is "certainly impending" or at a "substantial risk" of occurring, such mitigation efforts cannot form the basis for a concrete injury. _Tsao_, 986 F.3d at 1344. As the Supreme Court has warned, "to hold otherwise would allow 'an enterprising plaintiff … to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear.'" _Clapper_, 568 U.S. at 416.

As such, Plaintiffs' self-inflicted mitigation efforts cannot be used to manufacture Article III standing.

_Anxiety and Emotional Distress From Risk of Future Identity Theft_. The No-Injury Plaintiffs uniformly allege that they have individually experienced anxiety and stress as a result of the Breach. Complaint ¶¶ 168 (Connor), 193 (Edwards), 205 (Follett), 217 (Woods), 242 (Harriman), 254 (Gibbs). Such allegations do not plead a concrete injury.

Courts in this District routinely reject claims of emotional distress allegedly flowing from a data breach as failing to allege a concrete injury. _See_, _e.g._, _Fullwood-Demps_, 2024 U.S. Dist. LEXIS 129867, at *16-17 (no concrete injury where alleged emotional distress was not supported by plausible allegations of substantial risk of future identity theft); _DiPierro_, 737 F. Supp. 3d at 1326 (same); _Baron v. Syniverse Corp._, No. 8:21-CV-2349-SCB-SPF, 2022 WL 6162696, at *7 (M.D. Fla. Oct. 7, 2022) (emotional distress insufficient to confer standing absent a showing of concrete harm resulting from the underlying disclosure); _Preisler_, 2021 WL 2110794, at *5 (plaintiff cannot rely solely on "feelings of distress, confusion, or anxiety to fabricate concrete injury.").

None of the No-Injury Plaintiffs has plausibly alleged any substantial risk of future identity theft. Instead, each relies solely on his or her personal feelings of distress or anxiety, which cannot support Article III standing.

_Uptick in Spam Communications_. The No-Injury Plaintiffs allege that, following the Breach, each experienced an increase in spam communications. Complaint ¶¶ 167 (Connor), 192 (Edwards), 204 (Follett), 216 (Woods), 241 (Harriman), 253 (Gibbs).

In data breach cases, the Eleventh Circuit requires plaintiffs to allege actual misuse of their data or a substantial risk of such misuse. "Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing." _Tsao_, 986 F.3d at 1344. _See_

*also Baker v. Akumin Corp.*, No. 0:23-cv-62396, 2024 WL 1931480, at *4 (S.D. Fla. Apr. 16, 2024) (allegations of increased spam inadequate to plead concrete injury in fact); *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 994 (W.D. Ok. 2021) (receipt of phishing emails "does not plausibly suggest … misuse"); *McCombs v. Delta Grp. Elecs., Inc.*, 2023 WL 3934666, at *6 (D. N.M. Jun. 9, 2023) ("[s]pam calls, texts, and e-mails have become very common in this digitized world"). The No-Injury Plaintiffs uniformly allege that they have received increased spam communications since the data breach, Complaint ¶¶ 167, 192, 204, 216, 241, 253, but this fails to demonstrate the necessary concrete injury in fact.

*Unspecified Dark Web Activity*. Five of the six No-Injury Plaintiffs make the conclusory allegation that cybercriminals have, "on information and belief, held the data for ransom and will imminently post it on the dark web." Complaint ¶¶ 162 (Conner), 199 (Follett), 211 (Woods), 236 (Harriman), 248 (Gibbs). For her part, Edwards alleges that she has received notifications of dark web activity beginning in early 2025, which she wrongly cites as evidence that her "Private Information has already been misused." Complaint ¶ 187. The Complaint also alleges generically and without any factual particularity that "cybercriminals posted Plaintiffs' and the Class Members' Private Information for sale on the dark web" following the Breach. Complaint ¶ 3. Plaintiffs attempt to justify their conclusion that future identity theft is imminent by alleging that selling and disseminating private data on the dark web is "the *modus operandi* of cybercriminals that commit cyber-attacks of this type." Complaint ¶¶ 166 (Conner), 187 (Edwards), 199 (Follett), 211 (Woods), 236 (Harriman), 248 (Gibbs) (emphasis in original).

These allegations similarly fail to plausibly plead a concrete injury. *See*, *e.g., Baker*, 2024 WL 1931480, at *4 (rejecting as insufficient allegations that "there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes"); *DiPierro*, 737 F. Supp. 3d at 1324 ("Plaintiffs' conclusory allegation that they believe their information has been or will be sold because that is the nature of things is speculative."). Simply alleging that cybercriminals will imminently post data on the dark web because that is their "*modus operandi*" is akin to alleging that data will be sold on the dark web "because that is the nature of things." *See id*. (finding claim speculative). Indeed, these allegations are no more concrete than claiming a "strong possibility" that data was posted on the dark web and will be misused by criminals, which is insufficient for standing. *Baker*, 2024 WL 1931480, at *4. The No-Injury Plaintiffs again fail to allege any concrete injury, instead speculating about hypotheticals and the intentions of persons not before the Court. Therefore, they again fail to show standing.

*Diminished Value of Private Information*. None of the Plaintiffs alleges that his or her specific personal information has lost monetary value as a result of the Breach, *see* Complaint ¶¶ 157–254, instead offering the following conclusory statement:

> As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, ***has been diminished in its value by its unauthorized and likely release onto the dark web***, where it holds significant value for the threat actors.

Complaint at ¶ 144.

Diminution-of-value arguments are routinely rejected in data breach cases. *See*, *e.g.*, *Manning*, 2025 WL 3062563, at *6 (no concrete injury where plaintiff failed to allege he ever had the intention of selling his personal information to anyone); *Fullwood-Demps*, 2024 U.S. Dist. LEXIS 129867, at *14-15 (rejecting diminution of value argument where plaintiff failed to plausibly explain how the breach harmed ability to sell PII); *DiPierro*, 737 F. Supp. 3d at 1325 (plaintiffs failed to adequately allege a devaluation of their PII because they did not "plausibly explain how the [data breach] could have harmed [their] abilities to sell their PII"); *Baker*, 2024 WL 1931480, *6 ("[Plaintiff] pleads no facts showing how he has lost the ability to use his Private Information or showing any opportunity that is foregone due to the data breach. Without such facts, his allegations that the value of his Private Information has diminished and he thereby is injured are speculative, conclusory, and inadequate to plead an injury in fact."); *Perkins*, 2023 WL 2610157 at *2 (rejecting loss of value of PII as concrete injury for standing); *In re 21st Century Oncology Customer Data Sec. Breach Litig.,* 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) ("The Court rejects this theory of injury in fact because Plaintiffs have not alleged that their personal information has an independent monetary value that is now less than it was before the Data Breach.").

Plaintiffs' diminished-value arguments focus on establishing that their PII and PHI **might have** value, Complaint at ¶¶ 139-143, but that does not plead any actual concrete injury. Plaintiffs entirely fail to allege how their supposed ability to benefit from or use that information has been lessened as a result of the Breach, instead relying on conclusory statements about diminished value. *Id*. ¶ 144. Without allegations of actual lost opportunity to monetize their PII, Plaintiffs again fail to plead standing.

_Conclusory Allegations of Identity Theft and Fraud_. The No-Injury Plaintiffs offer only vague, conclusory allegations that their and the Class Members' data "has already been misused." _Id_. ¶¶ 162 (Conner), ¶ 187 (Edwards), 199 (Follett), 211 (Woods), 236 (Harriman), 248 (Gibbs). Such allegations do not plead a concrete injury for purposes of Article III standing. The Complaint further alleges summarily that both the named Plaintiffs and the Class Members have "suffered … actual identity theft and fraud." _Id_. ¶ 14. Such conclusory allegations, however, "are not enough to confer standing." _See Tsao_, 986 F.3d at 1343 ("vague, conclusory allegations that members of the class ha[d] suffered any actual misuse of their personal data" are "not enough to confer standing"); _Baker_, 2024 WL 1931480, at \*4 (plaintiff's conclusory allegations that plaintiff and class members suffered "actual identity theft" and that their PII "has been misused" insufficient for standing).

> **(b)    The Implausible Injury Plaintiffs' Injury Allegations Are Insufficient.**

The Implausible Injury Plaintiffs' allegations of actual misuse also collapse under the scrutiny of Article III requirements. Crist makes the wholly conclusory allegation that his data "has been misused in connection with credit inquiries in his name that he did not authorize." Complaint ¶ 224. He only claims that an unauthorized credit inquiry occurred in July 2025, six months **_after_** the Breach. _Id_. ¶ 224. Instead of alleging that specific types of stolen data were used to initiate this allegedly unauthorized credit inquiry or otherwise alleging some nexus between the Breach and the alleged misuse, Crist relies on "the sequence and [purportedly] short amount of time" between the credit inquiry half a year following the Breach. _Id_. ¶ 224. However, simply alleging that supposed misuse took place after a data breach is not enough to fairly trace the misuse to that data breach; instead, the pleading must

include allegations of a logical nexus between the two instances "**beyond allegations of time and sequence**." *Allgood v. PaperlessPay Corp.*, No. 3:20-CV-516-MMH-MCR, 2022 WL 846070, at \*9 (M.D. Fla. Mar. 22, 2022) (Howard, J.) (internal citations omitted) (emphasis added).

Overshown similarly alleges that "an unauthorized actor misused [his] stolen Private Information to make a fraudulent charge of $500 to [his] bank account." *Id*. ¶ 175. His claims fail for exactly the same reasons as Crist's. He merely asserts that an allegedly unauthorized charge appeared on his account "[s]hortly after the Data Breach." *Id*. ¶ 175. He does not specify what data he believes was stolen and used to commit the unauthorized charge, nor does he rely on anything beyond the mere fact that the unauthorized charge occurred subsequent to the Breach. Absent a logical nexus, Overshown's claims likewise fail the standing test. *Allgood*, 2022 WL 846070, at \*9.

Even if the Court determines that either naked allegation plausibly pleads an injury in fact (and it should not), the Court must still find that both lack standing because the alleged misuse is not fairly traceable to the Breach, as discussed in further detail below.

### (2)    TRACEABILITY IS NOT PLAUSIBLY PLED BY ANY PLAINTIFF

The traceability element of standing requires that the injury be "fairly traceable to the challenged action of the defendant." *DiPierro*, 737 F. Supp. 3d at 1330. To demonstrate that a data breach is fairly traceable to a particular instance of purported identity theft, "the pleadings must include allegations of a logical connection or nexus between the two instances "beyond allegations of time and sequence." *Allgood*, 2022 WL 846070, at \*9 (internal citations omitted). This logical nexus must include allegations connecting the specific

information allegedly stolen with the particular misuses alleged by **each** plaintiff. *DiPierro*, 737 F. Supp. 3d at 1330 (rejecting traceability to alleged fraudulent charges where plaintiff cited potential pieces of information that "may have been accessed in some combination" but did not "connect[] them with the claimed misuse of his bank account and debit cards."). Furthermore, traceability is absent if the plaintiff fails to address "parallel, independent causes, each of which could have resulted in the harm," DePierro, 737 F. Supp. 3d at 1330, such as other data breaches which may have impacted the same allegedly stolen data.

(a)    **All Plaintiffs Fail to Address or Rule Out Alternative Sources of Harm—Including the Ones They Plead.**

Plaintiffs' pleading regarding the thousands of data breaches with hundreds of millions of victims in 2023 alone, plus billions of records stolen even before that, *see* Complaint at ¶¶ 53-58 & 32 n.12, shows the data compromised in the Breach probably was independently obtained in the multitude of other breaches. On the face of the Complaint, it is clear that Plaintiffs' PII and specifically their PHI could have been obtained in any number of other, independent data breaches, which is fatal to Plaintiffs' standing. This was the result in *DiPierro*, where the plaintiff did not plausibly plead that his alleged misuse resulted from the subject breach versus any number of "parallel, independent causes, each of which could have resulted in the harm." 737 F. Supp. 3d at 1330. Similarly, the *Allgood* court recognized that:

> [A] possible claim is not the same thing as a plausible claim. It is possible that Plaintiffs' personal information was stolen in the Data Breach. … But it is also possible that the bad actors obtained the information before, or after and wholly apart from, the Data Breach."

*Allgood, 2022 WL 846070,* at *11. This point is especially true here, given Plaintiffs' pleading that essentially everyone in the United States had been a victim of identity theft before the Breach, likely multiple times over. *See id.* ¶¶ 52-58 & 32 n.12. Simply stated, ***"[n]othing in Plaintiffs' Complaint makes one scenario more plausible than the other*.**" *Allgood, 2022 WL 846070,* at *id*. (emphasis added). This alone requires dismissal of the Complaint.

**(b)    Overshown and Crist Fail to Allege Requisite Nexus Beyond Time and Sequence.**

Of the eight named Plaintiffs, only Crist and Overshown have even colorably alleged a concrete injury; however, neither has alleged an injury which is fairly traceable to the Breach.

The Complaint broadly alleges that the types of data compromised in the Breach included such information as "full names, dates of birth, driver's license numbers, Social Security numbers, financial and banking information including account and routing numbers, digital signatures, medical information, health insurance information, and other sensitive data." Complaint ¶ 2.[3] However, neither Crist nor Overshown allege which specific data of his was purportedly misused. For instance, while Overshown alleges an unauthorized charge on his bank account, he does not contend that it was the same account information that was allegedly compromised in the Breach. *Id.* ¶ 175. Crist also fails to allege the requisite nexus between the specific personal data that ***might have been*** compromised in the data breach and the alleged unauthorized credit inquiry. *Id.* ¶ 224. Neither alleges what particular sensitive

---

[3] Although not an issue for this motion to dismiss, the fact is that CPAP does not obtain banking information from its customers and does not retain customers' credit card information within its system.

personal information of theirs was actually compromised, resting on the vague and non-particularized statements in Paragraph 2 of the Complaint. *See id.* at ¶¶ 175 & 224.

These allegations closely track those addressed in *DiPierro*, where Judge Mizelle analyzed and rejected for lack of standing the claims of one of the plaintiffs, "James." The Court first observed that—out of all of the plaintiffs—James "present[ed] Plaintiffs' only arguable case" on standing. *DiPierro*, 737 F. Supp. 3d at 1329. James alleged that he "discovered a fraudulent charge to his bank account in the amount of $2,600.70 for the purchase of a television" and also suffered "two unauthorized ATM withdrawals in the amount of $400 each from his bank account," all of which occurred at some indeterminate time "[s]ince the data breach." *Id*. However, in finding that James had failed to plead facts plausibly connecting the three charges to the subject data breach, Judge Mizelle highlighted that James had failed to allege that his specific banking or financial information was stolen. *See id*. at 1330.

Similarly, in *Allgood*, Judge Howard refused to make "the inferential leap" that a cyber incident caused those plaintiffs' injuries based on allegations that their Social Security numbers, which had been stored on the defendant's servers, were stolen and used to commit identity theft. *See* 2022 WL 846070, at *10. Like here, those plaintiffs failed to present additional factual allegations sufficient to support an inference of "a logical connection between the two incidents." *See id.* (internal quotations omitted). In rejecting the plaintiffs' traceability arguments, Judge Howard observed that the plaintiffs "present[ed] no additional factual allegations to suggest that the connection between the two events in this case

amounts to more than a mere coincidence of time and sequence." *Id*. The same is true of both Overshown and Crist.

III.   **NO PLAINTIFF STATES A CLAIM FOR RELIEF**

Even if this Court finds that any Plaintiff has standing, no Plaintiff states a claim, independently requiring dismissal under Rule 12(b)(6). In short, Plaintiffs fail to—and cannot—plead the necessary elements of each one of their claims, warranting dismissal without leave to amend.

   A.    **First Cause of Action: Plaintiffs Fail to Plausibly Plead Negligence or Negligence Per Se**

      (1)    **No Negligence Claim Absent Bodily Injury or Property Damage**

"[A]s a general rule, [] bodily injury or property damage is an essential element of a cause of action in negligence." *Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 531 (Fla. 2d DCA 1999). Similarly, "[a] negligence claim premised on a duty created by the foreseeable risk of harm to others will not generally lie absent bodily injury or property damage." *Perry v. Schumacher Grp. of La.*, No. 2:13-cv-36-FTM-29, 2014 WL 988751 at *4 (M.D. Fla. Mar. 13, 2014) (Steele, J.), *aff'd*, 809 F. App'x 574 (11th Cir. 2020). *See also Whiddon v. Serv. Corp. Int'l*, 626 F. Supp. 3d 1243, 1245 (N.D. Fla. 2022) ("Before a plaintiff can recover damages for emotional distress …, the emotional distress suffered must flow from physical injuries sustained … ."); *In re Canon U.S.A. Data Breach Litig.*, 2022 WL 22248656, at *8 (E.D.N.Y. Mar. 15, 2022) ("[P]laintiffs cite no authority—and the Court is not aware of any—for the proposition that a loss of privacy can constitute damages for the purposes of a negligence claim.").

Here, because the Plaintiffs do not (and cannot) allege that they have suffered any bodily injury or property damages as a result of the Breach, *see* Complaint ¶¶ 157-254, their negligence claims fail and should be dismissed.

**(2)    No Negligence Per Se Claim Absent Duty, and Plaintiffs Do Not Adequately Plead Duty**

For the negligence per se claim, Plaintiffs rely on cursory references to Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and to the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1302d, *et seq.*, to attempt to satisfy the duty requirement. *See* Complaint ¶¶ 276-83. This tactic fails because "Florida courts have refused to recognize a private right of action for negligence per se based on an alleged violation of a federal statute that does not provide for a private right of action." *Stevens v. Danek Med., Inc.*, No. 95-14293-CIV, 1999 WL 33217282 at *5-6 (S.D. Fla. Apr. 16, 1999). Since "[t]here is no private cause of action implied under the Federal Trade Commission Act," Plaintiffs' cursory reference to the FTC Act does not state a claim for negligence per se. *Lingo v. City of Albany Dept. of Cmty. & Econ. Dev.*, 195 F. App'x 891, 894 (11th Cir. 2006). Likewise, Plaintiffs' passing references to HIPAA do not state a claim for negligence per se. *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365–66 (S.D. Fla. 2015) (rejecting negligence per se claim based on violation of HIPAA for lack of private right of action).

Dismissal is also proper where, like here, there is no special relationship or any extraordinary circumstance requiring the imposition of a duty. *See Tank Tech*, 244 So. 3d at 393-94. Plaintiffs allege summarily throughout the Complaint that CPAP was under a duty to specifically safeguard their PII against misuse by third parties. *See, e.g., id.* ¶¶ 40, 93, 273,

274. They allege that such a duty "arises under contract, statutory and common law, industry standards, representations made to Plaintiffs and Class Members, and because it is foreseeable that the exposure of Private Information to unauthorized persons—especially hackers with nefarious intentions—will harm the affected individuals." *Id*. ¶ 7. However, they have identified no contractual provision creating such a duty, nor any statute establishing a private right of action in this context, nor any special relationship or other extraordinary circumstance justifying such a duty. Moreover, "a legal duty is not established by evidence of foreseeability alone." *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).

### (3)    Absent Causation, Plaintiffs' Claims Independently Fail

Finally, even if a private-party data security duty exists (which it does not), Plaintiffs do not plausibly plead that their alleged damages were proximately caused by CPAP's conduct or even due to the Breach—which the Complaint concedes was perpetrated by third-party criminals. *Id.* at ¶ 1. Proximate cause is another indispensable element, which is not satisfied based on speculation and purely temporal coincidences involving unexplained and unrelated alleged misuse of unimpacted data or accounts.

To avoid dismissal for failure to plead causation, Plaintiffs must allege facts sufficient to rule out other potential causes of their purported injuries; bare allegations that they received notice of the Breach and that, therefore, the Breach (and CPAP) must be the cause of their "damages," is not enough. For example, in *Allgood*, Judge Howard found that conclusory allegations premised on a temporal coincidence failed to plead requisite causation. *See* 2022 WL 846070, at *10. The Court refused to make "the inferential leap" that a cyber incident caused the plaintiffs' injuries based on allegations that their Social Security

numbers, which were stored on the defendant's servers, were stolen and used to commit identity theft. *See id.* Like here, those plaintiffs failed to present additional factual allegations sufficient to support the inference of "a logical connection between the two incidents." *See id.* (quotations omitted). Moreover, as in this case, those plaintiffs "d[id] not allege that they have never been victims of identity theft." *Id*. Since Plaintiffs have pled that essentially everyone in the United States had been a victim of identity theft before the Breach, *see* Complaint ¶ 57, this alone requires dismissal of the Complaint.

For each of these reasons, Plaintiffs' claims based on negligence and negligence per se fail. Accordingly, the First Cause of Action should be dismissed.

**B.    Second Cause of Action: Plaintiffs Fail to State a Claim for Breach of Implied Contract**

Plaintiffs allege that when they provided their PII to CPAP in exchange for CPAP's services, they entered into implied contracts with CPAP pursuant to which CPAP agreed to reasonably protect such information from disclosure. *See* Complaint ¶¶ 295-302. Mutual assent, whether by written or spoken word or by conduct, remains the touchstone of contract formation. *See LoanFlight Lending, LLC v. Bankrate, LLC*, 378 So. 3d 1280, 1287 (Fla. 2d DCA 2024). Regardless of what Plaintiffs may think now, post-Breach, their post hoc subjective beliefs are insufficient to establish a meeting of the minds for an undefined level of data security. *See In re Mednax Services, Inc., Customer Data Sec. Breach Litig*., 603 F. Supp. 3d 1183, 1221 n. 20 (S.D. Fla. 2022) (declining to adopt "consumer expectation" theory of contract formation because "[u]nilateral and subjective expectations in a transaction cannot be inferred to coalesce into the meeting of the minds required to establish an implied contract"). Such a meeting of the minds in an alleged implied contract for data security only

occurs "in transactions where consumers are solicited or invited to provide personal information in exchange for a good or service." *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1265 (S.D. Fla. 2024) (quoting *In re Mednax Servs.*, 603 F. Supp. 3d at 1221). But this "good or service" must be akin to "data security services" and not a "good or service" that has a "merely incidental" data security benefit. *In re Mednax Servs.*, 603 F. Supp. 3d at 1215.

As is evident from Plaintiffs' allegations, they transacted with CPAP to receive healthcare services—not data security services—which defeats their implied contract claim. *See id.* at 1221 ("Plaintiffs' allegations reveal only that they provided their personal information as required to receive healthcare services from Defendants—not data security services beyond the privacy requirements already imposed on Defendants by federal law."). Further, Plaintiffs cannot rely on CPAP's privacy policy as a basis to assert their breach of contract claim, *see* Complaint ¶ 299, because it is not an independent contractual promise. *See*, *e.g.*, *Brush v. Miami Beach Healthcare Group Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (privacy notices "are not contractual in nature.").

In sum, Plaintiffs do not allege any facts showing mutual assent to the terms of a contract for data security, consideration for such an agreement, or a breach of its terms—*i.e.*, the essential elements of a contract under Florida law. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). Nothing plausibly suggests that Plaintiffs provided their personal data to CPAP for data security or paid for a data security service, or that CPAP agreed to undertake such a contractual obligation. The mere fact that CPAP was a victim of a cybersecurity incident does not equate to a plausible allegation that it had, much less

breached, any contract with Plaintiffs to provide some undefined "industry standard"-type of data security. Therefore, the Second Cause of Action should also be dismissed.

**C.    Third Cause of Action: Plaintiffs Fail to State a Claim for Unjust Enrichment**

"In Florida, the law of unjust enrichment requires a benefit to pass directly from the plaintiff to the defendant and that there be no available legal remedy at law." *Allgood*, 2022 WL 846070, at 11. Plaintiffs' conclusory allegations are insufficient to plead unjust enrichment. Complaint ¶¶ 312–321. As recognized in *Allgood*, an "unadorned conclusory allegation" that a plaintiff "conferred a monetary benefit on [the defendant]" for services unrelated, or ancillary at best, to data security fall short of stating a claim for unjust enrichment. 2022 WL 846070, at 11. The Complaint suffers from these same fatal defects. *See* Complaint ¶ 312 ("Plaintiffs and Class Members conferred benefits on Defendant by way providing payment and their Private Information to Defendant in Defendant's course of business."). Further, Plaintiffs do not (and cannot) plausibly plead that CPAP knowingly accepted and retained their PII as a direct benefit, which also requires dismissal of the Third Cause of Action. *See City Nat'l Bank of Florida as Tr. of Land Tr. No. 2400-9492-00 v. Signature Land, Inc.*, 397 So. 3d 1133, 1135 (Fla. 5th DCA 2024) (requiring, as one element of unjust enrichment, that the defendant knowingly accept and retain the benefit conferred), *review denied*, No. SC2025-0005, 2025 WL 1198372 (Fla. Apr. 25, 2025).

Consequently, the Third Cause of Action should also be dismissed.

**IV.    <u>CONCLUSION</u>**

Each Plaintiff has failed to plausibly plead an injury in fact and traceability, as required for Article III standing. Each has also failed to state any claim in negligence or contract.

Defendant CPAP Medical Supplies and Services, Inc., respectfully requests that the Court dismiss the Consolidated Class Action Complaint without leave to amend for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or, in the alternative, dismiss with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated: January 20, 2026          Respectfully submitted,

**AKERMAN LLP**

By:  */s/ Christian P. George*

Christian P. George, Esq.
Florida Bar No. 41055
christian.george@akerman.com

Adam C. Remillard, Esq.
Florida Bar No. 1002568
adam.remillard@akerman.com

50 North Laura Street – Suite 3100
Jacksonville, FL  32202
Tel.: (904) 798-3700
Fax: (904) 798-3730

and
**AKERMAN LLP**

Christopher Carver, Esq.
Florida Bar No. 993580
christopher.carver@akerman.com

201 East Las Olas Boulevard – Suite 1800
Ft. Lauderdale, FL  33301
Tel.: (954) 463-2700
Fax: (954) 468-2454

*Counsel for CPAP Medical Supplies and Services Inc.*