**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| **BRETT CONNER, JUWAN OVERSHOWN, DIANE EDWARDS, STEPHEN FOLLETT, RODERIC WOODS, JOHN CRIST, CHRIS HARRIMAN,** and **TYRONE GIBBS**, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs <br><br> v. <br><br> **CPAP MEDICAL SUPPLIES AND SERVICES INC.,** <br><br> Defendant. | Case No.: 3:25-cv-945-WWB-LLL <br><br> **Class Action** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

## I.     INTRODUCTION

This litigation is about Defendant's wrongful disclosure of Plaintiffs' and putative Class Members' highly sensitive Private Information in a Data Breach that Defendant could and should have prevented. As a result, Plaintiffs continue to suffer a litany of harms, including multiple instances of data misuse and identity theft using their compromised Private Information.

In its Motion to Dismiss (Doc. No. 41) ("Motion"), Defendant seeks to evade liability for its damaging conduct by arguing Plaintiffs lack standing and fail to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). These challenges are unavailing, as numerous courts have held in analogous data breach cases in the Eleventh Circuit and nationwide. Plaintiffs are entitled to sue Defendant for injuries that Defendant's failure to safeguard highly sensitive Private Information directly caused. The Motion should be denied in full.

## I.     BACKGROUND

Defendant CPAP Medical Supplies and Services, Inc. ("Defendant") is a provider of continuous positive airway pressure (CPAP) devices and other medical equipment for patients with sleep apnea. Consolidated Class Action Complaint, Doc. No. 36 ("Complaint" or "CAC") ¶ 4. Plaintiffs are Defendant's current and former customers "who were required to entrust their sensitive, non-public Private Information to Defendant as a condition of receiving Defendant's medical device products and related services." *Id.* ¶ 5. Defendant "benefited substantially" from Plaintiffs' Private Information, using the data to receive assignments of benefits

from Plaintiffs and impose price premiums on devices that integrate PHI. *Id.* ¶ 6.

As Plaintiffs allege, Defendant's mandatory collection and use of Private Information gave rise to obligations stemming from the FTC Act (15 U.S.C. § 45), HIPAA, common law, contract, and industry standards, to protect the data from unauthorized disclosure through reasonable cybersecurity measures. *Id.* ¶¶ 7, 41. Indeed, Defendant knew the consequences of failing to protect Plaintiffs' Private Information, including the risk of identity theft and misuse Plaintiffs would suffer as a result. *Id.* ¶ 62. Unfortunately, Defendant shirked its responsibilities to do so.

Due directly to Defendant's deficient cybersecurity, Plaintiffs' and Class Members' highly sensitive Private Information—"full names, dates of birth, driver's license numbers, Social Security numbers, financial and banking information including account and routing numbers, digital signatures, medical information, health insurance information, and other sensitive data"—was targeted, accessed, and stolen from Defendant's inadequately protected systems in a December 2024 data breach ("Data Breach"). *Id.* ¶¶ 1, 2, 42–47. The Data Breach happened because "Defendant did not use reasonable security measures appropriate to the nature of the sensitive Private Information it collected and maintained, such as encrypting the information or deleting it when it is no longer needed," which allowed and caused cybercriminals to target Plaintiffs' and Class Members' Private Information on Defendant's systems and carry out the Data Breach." *Id.* ¶ 46.

The Data Breach's detrimental impact has been actual and acute, and Plaintiffs have endured multiple instances of misuse and identity theft as a direct

result: shortly after the Data Breach, an unauthorized actor misused Plaintiff Overshown's stolen Private Information to make a fraudulent charge of $500 to Plaintiff Overshown's bank account. *Id.* ¶ 175. Since early 2025, Plaintiff Edwards has received numerous notifications informing that her Private Information was found posted on the dark web, and been inundated with spam calls referencing specific personal information about her in connection with a loan she did not apply for. *Id.* ¶¶ 187, 192. Within months of the Data Breach, Plaintiff Crist's Private Information was misused in connection with credit inquiries in his name that he did not authorize. *Id.* ¶¶ 224. All Plaintiffs spent and will spend money and time addressing the foregoing and the imminent risk of further identity theft and fraud they still face. *See, e.g. id.* ¶¶ 163–64, 176–77, 188–90, 200–01, 212–13, 225–26, 237–38, 249–50. Plaintiffs also suffered injuries including privacy invasions and emotional harms. *See, e.g. id.* ¶¶ 168, 181, 193, 205, 217, 230, 242, 254.

## II.    LEGAL STANDARDS

When a complaint is attacked under Rule 12(b)(1) for lack of standing, "the allegations of the complaint are taken as true." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). To establish standing under Article III, Plaintiffs must show (1) they suffered an "injury in fact" that (2) is "fairly traceable" to the defendant's challenged conduct and (3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). If a complaint contains sufficient facts to plausibly demonstrate these elements, a motion to dismiss for lack of standing must be denied. *See Trichell v.*

*Midland Credit Mgmt., Inc*., 964 F.3d 990, 996 (11th Cir. 2020).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "merely tests the sufficiency of the complaint; it does not decide the merits of the case." *Spector v. Generac Power Sys., Inc*., 2010 WL 11444279, at *1 (S.D. Fla. 2010). A Rule 12(b)(6) motion may be granted only if, after accepting all allegations as true, the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is inappropriate "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1198 (S.D. Fla. 2022). In this inquiry, "[a]ll reasonable inferences are interpreted in favor of the plaintiff." *Stephens v. Dep't of Health & Human Servs*., 901 F.2d 1571, 1573 (11th Cir. 1990).

## III.    ARGUMENT AND MEMORANDUM OF LAW

### a. <u>Plaintiffs Have Article III Standing.</u>

Defendant incorrectly contends Plaintiffs cannot sue for their injuries in this Court. As outlined below, Plaintiffs sufficiently allege Article III standing, including the injury-in-fact and traceability elements Defendant incorrectly challenges.

#### 1.    Plaintiffs Allege Cognizable Injuries-in-Fact.

In the Data Breach's aftermath, Plaintiffs suffered numerous instances of identity theft and misuse of their stolen Private Information, along with other economic and non-economic damages. These are cognizable injuries traceable to Defendant's conduct. The injury element of standing requires "'an invasion of a

legally protected interest' that is 'concrete and particularized' and 'actual or imminent." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. 560). That "the 'actual or imminent' is disjunctive is critical: it indicates that a plaintiff need not wait until he or she has actually sustained the feared harm in order to seek judicial redress, but can file suit when the risk of harm becomes imminent." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022). "This is especially important in the data breach context, where the disclosure of the data may cause future harm as opposed to currently felt harm." *Id.*

A. <u>All Plaintiffs Allege Actual Injuries via "Some Misuse" of Private Information.</u>

Defendant's argument begins with the factually and legally incorrect assertion that Plaintiffs whose specific Private Information has not yet been misused cannot have suffered injuries-in-fact. Eleventh Circuit precedent refutes Defendant's position.

The Eleventh Circuit articulated the standard for concrete injury in a data breach case in *Tsao v. Captiva MVP Rest. Partners, LLC*, clarifying that "evidence of actual misuse is not necessary for a plaintiff to establish standing following a data breach." 986 F.3d 1332, 1342-43 (11th Cir. 2021). Rather, allegations of "*some* misuse of class members' data" are "sufficient" to establish injuries-in-fact as to the named plaintiffs. *Id.* at 1344. The Eleventh Circuit reiterated the "some misuse" standard in *Green-Cooper v. Brinker Int'l, Inc.*, holding "the fact that hackers took credit card data and corresponding personal information from

5

[defendant] and affirmatively posted that information for sale on [a dark web site] is the misuse for standing purposes that we said was missing in *Tsao*." 73 F.4th 883, 889-90 (11th Cir. 2023). The *Green-Cooper* plaintiffs thus satisfied Article III's injury requirement. *Id.*

Similarly here, Plaintiffs Overshown and Crist allege instances of identity theft using their Private Information as a result of the Data Breach. CAC ¶¶ 175, 224. Additionally, Plaintiff Edwards specifically alleges her "Private Information has already been misused, evidenced by multiple notifications Plaintiff Edwards has received since early 2025 informing her that her Private Information was found published on the dark web." *Id.* ¶ 187. Plaintiff Edwards's Private Information "has also been misused to inundate her with spam and scam calls . . . that refer to Plaintiff Edwards specifically by name and attempt to discuss . . . a loan she did not apply for." *Id.* ¶ 192. Both the dark web publication and spam calls about suspicious loans constitute "misuse" and injuries-in-fact. *Green-Cooper*, 73 F.4th at 890 ("personal information floating around on the dark web" is misuse and concrete injury); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1258 (S.D. Fla. 2024) ("numerous calls" asking plaintiff to activate credit card is "actual misuse"). In other words, the Complaint alleges "some misuse" of Private Information to establish injuries-in-fact for all named Plaintiffs. *Green-Cooper*, 73 F.4th at 889-90; *Tsao*, 986 F.3d 1332, 1342-43.

To the extent it complains Plaintiffs Connor, Edwards, Follet, Woods, Harriman, and Gibbs' allegations of misuse and identity theft are too "conclusory"

6

and "vague," Defendant ignores the Complaint and the law. *See* MTD at 15. Each of those Plaintiffs allege his Private Information "has already been misused, as cybercriminals targeted [Plaintiff's] Private Information, stole it from Defendant's systems, . . . and will imminently post it on the dark web, that has not been done already." CAC ¶¶ 162, 199, 211, 236, 248. Given that "[w]here a data breach targets PII, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged," all Plaintiffs plausibly allege misuse. *See Fortra*, 749 F. Supp. 3d at 1259 (citation modified) (citing *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016)).

B. <u>*All Plaintiffs Allege Actual Injuries via the Imminent Risk of Identity Theft.*</u>

Importantly, the "some misuse" of Private Information compromised in the Data Breach that Plaintiffs allege "establishes both a present injury . . . and a substantial risk of future injury—future misuse of personal information." *Green-Cooper*, 73 F.4th at 890. *See also Fortra*, 749 F. Supp. 3d at 1258 ("[E]vidence of misuse of certain individuals' data is helpful in establishing a 'substantial risk' of future harm for plaintiffs who remain unaffected."); *Mednax*, 603 F. Supp. 3d at 1203 ("Given that Plaintiffs allege actual access and misuse of their PHI and PII, they have established a 'substantial risk' of future harm and, thus, injury in fact.").

Similarly, two Plaintiffs allege actual identity theft due to the Data Breach, and "the allegations of *some* Plaintiffs that they have suffered injuries resulting from actual identity theft support the sufficiency of *all* Plaintiffs' allegations that they face a risk of identity theft," a concrete injury-in-fact. *In re Equifax, Inc*. *Customer*

7

*Data Security Breach Litig,*, 999 F.3d 1247, 1262 (11th Cir. 2021) (emphasis in original); *see also In re Loancare Data Sec. Breach Litig.,* 2025 U.S. Dist. LEXIS 175663, at *23 (M.D. Fla. Sep. 9, 2025) ("[I]dentity theft after the data breach would constitute both actual injury for himself and a 'certainly impending' or 'substantial' risk of future harm for the rest of the class whose information was accessed.").

   C. *Plaintiffs Allege Additional Injuries Tied to the Risk of Identity Theft.*

   Because Plaintiffs establish an imminent risk of future harm, their other injuries are also concrete. *See*, *e.g.*, *Fortra*, 749 F. Supp. 3d at, 1259-60 (plaintiffs alleged concrete harms for loss of privacy. lost value of PII, mitigation time and costs, and emotional harm); *Mednax*, 603 F. Supp. 3d at 1201-05 (substantial risk of harm, coupled with emotional injuries and mitigation efforts, sufficient to confer standing); *see also Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023) (holding wasted time satisfies Article III injury requirement and noting emotional distress is among "garden variety injuries" for standing purposes).

   ***Mitigation Costs and Lost Time.*** The Eleventh Circuit and district courts therein have held that "when a plaintiff faces a significant risk of harm, the time, money, and effort spent mitigating that risk are also concrete injuries." *Equifax*, 999 F.3d at 1262 (quotation omitted). This is true even for plaintiffs who have not yet suffered identity theft, because "[t]he actual identity theft already suffered by some Plaintiffs further demonstrates the risk of identity theft all Plaintiffs face." *Id*. at 1262-63. Due to the Data Breach and attendant risk of identity theft, Plaintiffs purchased and spent time reviewing credit monitoring and froze their credit, among

other efforts. Since the risk of harm is a concrete injury, Plaintiffs' lost time and costs are too. *Equifax*, 999 F.3d at 1262; *Mednax*, 603 F. Supp. 3d at 1204; *Desue v. 20/20 Eye Care Net., Inc.*, 2022 WL 796367, at *7 (S.D. Fla. Mar. 15, 2022).

*Emotional Distress*. Emotional distress is likewise an injury-in-fact, especially when paired with a risk of imminent harm. *See Mednax*, 603 F. Supp. 3d at 1202; *Walters*, 60 F.4th 642 (emotional distress among "garden variety injuries" for standing purposes).

*Loss of Privacy.* Plaintiffs' allegations of loss of privacy and confidentiality of their Private Information are also sufficient. *Mednax*, 603 F. Supp. 3d at 1205 (lost privacy sufficient to confer standing where "unauthorized third parties, and possibly criminals, gained access to [plaintiffs'] PHI and PII"); *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 290 (2d Cir. 2023) (in and of itself, exposure of a plaintiff's private PII to unauthorized third parties is sufficiently concrete).

*Diminished Value of Private Information.* The case Defendant cites in attempt to refute these injuries, *DiPierro v. Florida Health Sciences Center*, 737 F. Supp. 3d 1314, 1322 (M.D. Fla. 2024) was predicated upon the fact that, unlike here, the plaintiffs did not plead a substantial risk of harm. The Court, however, should follow *Mednax*, which "join[ed] more recent decisions" holding the diminished value of Private Information is a cognizable injury-in-fact. 603 F. Supp. 3d at 1204; *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) (collecting cases for "the growing trend . . . to recognize the lost property value of [PII]").

9

D. Plaintiffs Overshown and Crist Allege Plausible Identity Theft and Misuse.[1]

Defendant is plainly wrong in arguing Plaintiffs Overshown's and Crist's allegations of identity theft do not establish injuries-in-fact. Where a plaintiff alleges unauthorized charges, as Plaintiff Overshown does here (CAC ¶ 175), "[t]here is no dispute that these . . . allegations of identity theft and resulting damages 'constitute an injury in fact under the law.'" *Equifax*, 999 F.3d at 1263 (citation modified) (quoting *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012)). Likewise, unauthorized account injuries like those Plaintiff Crist alleges (CAC ¶ 224) constitute "actual misuse." *Fortra*, 749 F. Supp. 3d at 1258.

## 2. Plaintiffs' Injuries Are Traceable to Defendant's Conduct.

In the Article III standing context, "'fairly traceable' does not mean 'certainly traceable.'" *Mednax*, 603 F. Supp. 3d at 1205. "Even a showing that a plaintiff's injury is indirectly caused by a defendants' actions satisfies the fairly traceable requirement." *Resnick*, 693 F.3d at 1324; *see also Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (citation modified) ("To satisfy Article III's causation requirement, the named plaintiffs must allege that their injuries are connected with the conduct of which they complain."). Thus, on a motion to dismiss, "general factual allegations of injury resulting from the defendant's"

---

[1] To the extent it argues Plaintiffs Overshown's and Crist's allegations about actual identity theft lack a "logical nexus" to the Data Breach (MTD at 15–16), Defendant conflates standing's injury and traceability prongs. *See Lujan*, 504 U.S. at 560 (traceability requires a "causal connection"). Defendant concedes both Plaintiffs have alleged "actual misuse," MTD at 15, which is clearly an injury-in-fact. *Green-Cooper*, 73 F.4th at 889-90.

conduct satisfy the traceability requirement. *Moody v. Warden, Holman CF*, 887 F.3d 1281, 1286 (11th Cir. 2018); *Fortra*, 749 F. Supp. 3d at 1262 (quotations omitted) (recognizing "relatively modest burden applicable to a standing analysis").

Plaintiffs plead traceable injuries here. They specifically allege "criminal hackers accessed Defendant's network systems and stole Plaintiffs' [Private Information] stored therein, including their full names, dates of birth, driver's license numbers, Social Security numbers, financial and banking information including account and routing numbers, digital signatures, medical information, health insurance information, and other sensitive data." CAC ¶ 2. Meanwhile, each Plaintiff alleges he or she "is very careful about sharing [his or her] sensitive Private Information," and "diligently protects [his or her] Private Information." *Id.* ¶¶ 158, 170, 183, 195, 207, 219, 232, 244. Nevertheless, due to the Data Breach Plaintiffs suffered injuries including identity theft and the imminent risk thereof. *Id.* ¶ 14.

The *Resnick* plaintiffs established traceable injuries through allegations mirroring Plaintiffs' in this case: "AvMed failed to secure their information on company laptops, and that those laptops were subsequently stolen," and "[d]espite Plaintiffs' personal habits of securing their sensitive information, Plaintiffs became the victims of identity theft" thereafter. 693 F.3d at 1324. Just as in *Resnick*, Plaintiffs' parallel allegations satisfy traceability here.

A. Plaintiffs Need Not "Rule Out" Potential Alternative Causes.

Given that "general factual allegations of injury resulting from the defendant's" conduct satisfy the traceability requirement" at this motion to dismiss

stage, Defendant's argument that Plaintiffs' injuries may be attributable to other breaches is unavailing. Numerous courts have rejected motions to dismiss raising similar traceability challenges in data breach cases, finding them suited for a later phase. *See, e.g.*, *In re Zappos.com, Inc.*, 888 F.3d 1020, 1029 (9th Cir. 2018) ("[T]hat 'some other store might [also] have caused the plaintiffs' private information to be exposed does nothing to negate the plaintiffs' standing to sue' for the breach in question."); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) ("Merely identifying potential alternative causes does not defeat standing."); *Fortra*, 749 F. Supp. 3d at 1261 (rejecting argument identity theft is untraceable due to potential alternative causes).

Defendant attempts to support its incorrect "potential alternative causes" argument by misrepresenting *Allgood v. PaperlessPay Corp.*, 2022 U.S. Dist. LEXIS 51139, at *24 (M.D. Fla. Mar. 22, 2022). The *Allgood* text Defendant quotes and relies on is about the proximate cause element of certain claims in the context of a Rule 12(b)(6) motion, not about standing. *See* MTD at 16–18; 2022 U.S. Dist. LEXIS 51139, at *24. But "to satisfy Article III's causation requirement, a plaintiff need not show proximate causation." *Fortra*, 749 F. Supp. 3d at 1261. Indeed, the *Allgood* plaintiffs established traceable injuries for standing purposes where their alleged identity theft took place nine and twelve months after the breach, even without allegations their data was actually stolen. 2022 U.S. Dist. LEXIS 51139, at *9. Plaintiffs allege far more detailed facts establishing traceable injuries here.

Defendant's other cited case *Dipierro* is distinguishable and likewise unpersuasive. In *DiPierro*, the plaintiff failed to even plausibly allege his information had been taken in the subject breach. 737 F. Supp. 3d at 1329. Here, in contrast, Plaintiffs specifically plead, "Hackers targeted and obtained Plaintiffs' and Class Members' Private Information" in the Data Breach. CAC ¶ 12. The alternative-cause argument "is a theory of defense that [Defendant] will be entitled to pursue at the merits phase," and inappropriate at this stage. *See Lewert*, 819 F.3d at 969.

B. Plaintiffs Overshown and Crist Allege Traceable Identity Theft

Defendant's incorrect argument that Plaintiffs Overshown's and Crist's identity theft and misuse are not fairly traceable again misrepresents the Complaint and the law. *See* MTD at 18–20. To start, Defendant's position rests on its false assertion that neither Plaintiff alleges identity theft using the same information that was compromised in the Data Breach. *Id.* at 18. That is plainly wrong: the Complaint specifically pleads "an unauthorized actor *misused Plaintiff Overshown's stolen Private Information* to make a fraudulent charge of $500 to Plaintiff Overshown's bank account." CAC ¶ 175 (emphasis added). Similarly, "*Plaintiff Crist's Private Information compromised in the Data Breach* has been misused in connection with credit inquiries in his name that he did not authorize." *Id.* ¶ 224 (emphasis added). Further, "Private Information" is a defined term meaning Plaintiffs' "*full names*, *dates of birth*, driver's license numbers, *Social Security numbers*, *financial and banking information including account and routing*

13

*numbers*, *digital signatures*, medical information, health insurance information, and other sensitive data." *Id.* ¶ 2 (emphasis added).

Even had Plaintiffs Overshown and Crist not specified that the Private Information stolen in this Data Breach was the same misused to commit identity theft against them, their injuries would still be traceable. That is because the Complaint describes how even if all information needed to commit identity theft was not disclosed in a breach, criminals still aggregate compromised data with data from other sources to commit identity crimes. *See id.* ¶¶ 110–16; *Cravens v. Garda CL Se., Inc.*, 2024 U.S. Dist. LEXIS 227104, at *20 (S.D. Fla. Dec. 6, 2024) (allegations "that cybercriminals could use Viveros's compromised PII/PHI (like her social security number) to access her credit card accounts even if that account information was not compromised . . . are sufficient to establish traceability at the pleading stage"); *Fortra*, 749 F. Supp. 3d at 1262 (alterations omitted) ("[A]lthough Defendants argue there is a mismatch between the compromised data and information actually misused, it is entirely plausible that . . . 'by aggregating information obtained from the Data Breach with other sources, or other methods, criminals can assemble a full dossier of Private Information on an individual,' facilitating 'a wide variety of frauds, thefts, and scams.'"); *Mednax*, 603 F. Supp. 3d at 1206 (traceability satisfied where "even if the data accessed in the Data Breaches did not provide all the information necessary to inflict these harms, they very well could have been enough to aid therein").

\* \* \*

14

In sum, because Plaintiffs plausibly allege injuries-in-fact that are traceable to Defendant's Data Breach, the Rule 12(b)(1) Motion must be denied.

**b. Plaintiffs Plead Plausible Claims for Relief.**

**1. Plaintiffs State a Claim for Negligence.**

Plaintiffs' negligence claims satisfy federal pleading standards under Rule 8(a) as it gives notice of the claims and the grounds upon which it rests. *See Perkins Welldynerx, LLC*, 2023 WL 2610157, at *1 (M.D. Fla. Mar. 23, 2023). Defendant's arguments regarding Plaintiffs' negligence claims fail to address this District's controlling authority contradicting its position.

A.  Defendant Owed a Duty to Protect Plaintiffs' Private Information.

"Federal courts in Florida have well established that entities which collect sensitive, private data from consumers and store such data on their networks have a duty to protect the information." *Mednax*, 603 F. Supp. 3d at 1222; *see also Farmer v. Humana, Inc.*, 82 F.Supp.3d 1176, 1186 (M.D. Fla. 2022) (business that "collects sensitive, private data from consumers," it has "a duty to protect" it).

Plaintiffs allege Defendant's duty arises from two sources: (1) the foreseeable zone of risk created by Defendant's storage of Plaintiffs' Private Information on its inadequately secured systems; and (2) Defendant's violations of Section 5 of the FTC Act and HIPAA, which constitute *prima facie* evidence of negligence under Florida law. Under both theories, Defendant had a duty to implement and maintain adequate data security measures to safeguard Plaintiffs' Private Information. *See Weinberg v. Advanced Data Processing, Inc.*, 147 F.

15

Supp. 3d 1359, 1365 (S.D. Fla. 2015).

First, a duty arises under Florida law when "a defendant's conduct creates a foreseeable zone of risk." *Farmer*, 582 F. Supp. 3d at 1185. Applying this principle, businesses like Defendant that collect sensitive, private data have a duty to protect that information, including from the foreseeable criminal acts of third parties. *See, e.g.*, *In re Brinker Data Incident Litig.*, 2020 WL 691848, at \*7–8 (M.D. Fla. Jan. 27, 2020). ("[Defendant] . . . had control over the information and had a duty to use reasonable care in protecting that data from theft."); Plaintiffs allege Defendant failed to adequately secure its systems despite the known risk of a data breach, evidenced in part by publicized attacks on other healthcare providers. CAC ¶¶ 58–60. It was thus foreseeable Defendant's failure to exercise due care would result in Plaintiffs' injuries, such that "[t]hese facts sufficiently allege a duty." *Brinker*, 2020 WL 691848, at \*7 (allegations defendant knew the risk of a breach but failed to prevent it sufficient to plead duty).

Second, "Florida courts permit proof of a statutory violation to serve as *prima facie* evidence of negligence because the standard of conduct or care embraced within such a legislative measure represents a standard of at least reasonable care." *Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. 4th DCA 2014) (citation modified); *see also, e.g.*, *Bahmann v. N.A.*, 2023 WL 5573820, at \*3 (M.D. Fla. Aug. 29, 2023) ("Florida courts do allow the showing of a statutory violation to establish the existence of a duty and a breach."); *Brinker*, 2020 WL 691848, at \*9 ("Plaintiffs should be able to use the FTC Act as evidence that the data breach was within the

foreseeable zone of risk."). Plaintiffs allege the FTC Act establishes specific duties to use reasonable measures to protect Private Information. CAC ¶¶ 66–75.

B. <u>Defendant's Deficient Data Security Caused Plaintiffs' Injuries.</u>

Under Florida law "proximate cause is a fact-specific assessment by the jury." *Chirillo v. Granicz*, 199 So. 3d 246, 249 (Fla. 2016). Nonetheless, Defendant argues incorrectly that Plaintiffs' negligence claim should be dismissed for the proximate cause element. MTD at 22–23.

Plaintiffs allege sufficient facts to plead causation here. For  example, the Complaint alleges that Plaintiffs' Private Information including names, Social Security numbers, and financial account numbers were stolen in the Data Breach, and that "shortly after" the Data Breach an unauthorized actor "misused Plaintiff Overshown's stolen Private Information to make a fraudulent charge of $500 to Plaintiff Overshown's bank account." CAC ¶¶ 2, 175. Further, "[a]fter the Data Breach, cybercriminals posted Plaintiffs' and the Class Members' Private Information for sale on the dark web." *Id*. ¶ 3. And all Plaintiffs allege they are "very careful about sharing [their] sensitive Private Information," and "diligently protect[] [their] Private Information." *Id.* ¶¶ 158, 170, 183, 195, 207, 219, 232, 244. In *Mednax*, the plaintiffs similarly alleged PII stolen in that data breach was posted on the dark web, the same PII was used to commit identity theft against at least one plaintiff, and all plaintiffs took steps to protect their PII. 603 F. Supp. 3d at 1224. The *Mednax* court correctly held, "A reasonable jury could find that these facts establish causation" for the negligence claim. *Id.* The same is true here.

Defendant relies on *Allgood* to argue causation is lacking, but that case is distinguishable and no support for Defendant's incorrect position. The *Allgood* court found causation lacking because the plaintiffs "d[id] not present factual allegations that their personally identifiable information was taken." 2022 U.S. Dist. LEXIS 51139, at *26. Here, however, all Plaintiffs specifically allege, "Hackers targeted and obtained Plaintiffs' [] Private Information from Defendant's systems because of the data's value in exploiting and stealing Plaintiffs' and Class Members' identities." CAC ¶ 12. This case is more like *Mednax* than *Allgood*, and as in *Mednax*, Plaintiffs' negligence claim is well pled.

C. The Economic Loss Rule Is No Bar to the Negligence Claim.

Given the similarities between Plaintiffs' allegations and those in data breach cases like *Farmer* and *Mednax* pleading plausible negligence claims, Defendant's argument that Plaintiffs must allege they suffered bodily injury or property damage based on factually distinct cases is unavailing, and the Court should disregard it. *See* MTD at 20-21; *Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 531 (Fla. 2d DCA 1999) (employment claims); *Perry v. Schumacher Grp. of La.*, 2014 WL 988751, at *5 (M.D. Fla. Mar. 13, 2014) (discrimination claims); *Whiddon v. Serv. Corp. Int'l*, 626 F. Supp. 3d 1243 (N.D. Fla. 2022) (corpse mishandling claims).

**2. Plaintiffs State a Claim for Breach of Implied Contract.**

"An implied-in-fact contract arises from the parties' conduct, industry custom, and surrounding circumstances evidencing a mutual assent and a meeting of the minds." *Farmer*, 582 F. Supp. 3d at 1187. Florida courts recognize claims

18

for breach of implied contract in the data breach context. *See, e.g. Resnick,* 693 F.3d at 1327–28 (applying Florida law, denying motion to dismiss implied contract claim where customers' PHI was stolen from defendant); *Cravens*, 2024 WL 5058304, at *8–9 (finding implied-in-fact contracts because plaintiffs "were required to provide their PII/PHI to [defendant] as a condition of receiving products"); *Brinker*, 2020 WL 691848, at *4 (same).

Plaintiffs allege that when they provided their Private Information to Defendant in exchange for Defendant's services, they entered into implied contracts pursuant to which Defendant agreed to reasonably protect such information from disclosure. CAC ¶¶ 295-302. As the *Farmer* court aptly reasoned, "[w]here, as here, a person hands over sensitive information, in addition to receiving a service, they presumably expect to receive an implicit assurance that the information will be protected." 582 F. Supp. 3d at 1187 (citation modified). Thus, the *Farmer* plaintiff plausibly alleged mutual assent to an implied contract of data security where, as here, he "was required to provide a variety of PII, including his name, Social Security number, and date of birth" to defendant as a condition of the parties' transaction. *Id*. The same conclusion is warranted in this case.

Even if Plaintiffs do not allege "quantifiable damages" (they do), they are still entitled to nominal damages. *See E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc*., 2011 WL 4343790, at *4 (M.D. Fla. Aug. 10, 2011) ("In a breach of contract action, even if a party is unable to sufficiently allege quantifiable damages, . . . under Florida Law, a party may nevertheless recover nominal damages.").

19

### 3. Plaintiffs State a Claim for Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must show that "(1) a benefit was conferred, (2) the recipient was aware that a benefit was received and; (3) under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Fortra*, 749 F. Supp. 3d at 1266.

In *Resnick*, the plaintiffs sufficiently stated a claim for unjust enrichment when they alleged that they conferred a monetary benefit to defendant in the form of monthly premiums, that defendant "appreciates or has knowledge of such benefit," that it used the premiums to "pay for the administrative costs of data management and security," and that it "should not be permitted to retain the money belonging to plaintiffs ... because it failed to implement the data management and security measures that are mandated by industry standards." 693 F.3d at 1328.[2] Here, Plaintiffs likewise allege they paid a premium for Defendant's products and services and that a portion of that payment should have been allocated to providing data security. CAC ¶¶ 6, 31, 152.

Accordingly, Plaintiffs sufficiently allege their unjust enrichment claim in the alternative to the breach of implied contract claim. *See* Fed. R. Civ. P. 8(d)(2).

## IV. CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

---

[2] *City Nat'l Bank of Fla. v. Signature Land, Inc.*, 397 So. 3d 1133, 1135 (Fla. 5th DCA 2024) is inapplicable as it was decided after trial based upon a full factual record.

Dated: February 19, 2026

Respectfully submitted,

*/s/  Jeff Ostrow*
Jeff Ostrow
Caroline Herter
**KOPELOWITZ OSTROW, P.A.**
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel.: (954) 332-4200
ostrow@kolawyers.com
herter@kolawyers.com

Mariya Weekes
Florida Bar No. 56299
**MILBERG, PLLC**
333 SE 2nd Avenue
Suite 2000
Miami, FL, 33131
Tel: (786) 879-8200
Fax: (786) 879-7520
Email: mweekes@milberg.com

Marc H. Edelson*
Liberato P. Verderame
(admitted *pro hac vice* )
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, PA 18940
T: (215) 867-2399
medelson@edelson-law.com
lverderame@edelson-law.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2026, a true and correct copy of the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

By:   *s/ Jeff Ostrow*