**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BRETT CONNER, DIANE EDWARDS,
JUWAN OVERSHOWN, STEPHEN
FOLLETT, TYRONE GIBBS, CHRIS
HARRIMAN, RODERIC WOODS and
JOHN CRIST,

          Plaintiffs,

v.                                                                              Case No.: 3:25-cv-945-WWB-LLL

CPAP MEDICAL SUPPLIES AND
SERVICES INC.,

          Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion to Dismiss Consolidated Class Action Complaint (Doc. 41)[1] and Plaintiffs' Response in Opposition (Doc. 44). For the reasons set forth below, Defendant's Motion will be granted in part and denied in part.

## I.    BACKGROUND

Plaintiffs in this consolidated, putative class action are users of Defendant CPAP Medical Supplies and Services Inc.'s sleep-apnea products and one contract employee of Defendant. (Doc. 36, ¶¶ 4–5, 28–29, 218). They seek to represent a class of victims of Defendant's December 2024 data breach, which they allege compromised their sensitive personal health information and personally identifiably information. (Id. ¶¶ 1–2,

---

[1] Defendant's Motion fails to comply with Local Rule 3.01(g). In the interests of justice, the Court will consider the Motion because this matter is fully briefed and ripe for resolution on the merits, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

256).  Plaintiffs claim that Defendant could have but failed to prevent the breach by implementing reasonable security measures, such as encryption or deletion of stale information.  (*E.g.*, *id.* ¶¶ 46, 48).

Defendant learned of the breach one week after it occurred and began notifying Plaintiffs and other victims in August 2025.  (*Id.* ¶¶ 10, 42–43, 49).  Through Defendant's notifications, Plaintiffs were "generally inform[ed]" that Defendant "discovered . . . that [its network was] accessed between December 13, 2024, and December 21, 2024," and that the network "contained some of [Plaintiffs'] personal information and/or protected health information as described in more detail below."  (*Id.* ¶ 43).  Plaintiffs omit the additional details but allege, as a group, that "their full names, dates of birth, driver's license numbers, Social Security numbers, financial and banking information including account and routing numbers, digital signatures, medical information, health insurance information, and other sensitive data" were stolen.  (*Id.* ¶ 2).  Plaintiffs refer to this data, in the aggregate, as their "Private Information."  (*Id.*).

Plaintiffs allege that, because of Defendant's data breach, their Private Information was stolen by cybercriminals and was or will be posted for sale on the dark web.  (*E.g.*, *id.* ¶¶ 3, 13, 162, 166).  Generally, Plaintiffs allege that the value of their Private Information has been diminished by its "likely release onto the dark web."  (*E.g.*, *id.* ¶ 144).  More specifically, Plaintiff Juwan Overshown alleges that "[s]hortly after the Data Breach, an unauthorized actor misused [his] stolen Private Information to make a fraudulent charge of $500 to Plaintiff Overshown's bank account," which he has been unable to recover.  (*Id.* ¶ 175).  Plaintiff John Crist alleges that unauthorized credit inquiries were made in his name in July 2025.  (*Id.* ¶ 224).  And Plaintiff Diane Edwards alleges that she

2

has received multiple notifications informing her that her Private Information has been published on the dark web.  (*Id.* ¶ 187).

Plaintiffs' allegations of harm are otherwise indistinguishable.  Plaintiffs have expended time mitigating the effects of the breach by monitoring credit reports and financial accounts, changing passwords, contacting counsel, or freezing their credit accounts.  (*Id.* ¶¶ 163, 176, 188, 200, 212, 225, 237, 249).  They anticipate spending additional time and money on addressing harms caused by the breach, which has put them at risk of identity theft.  (*E.g., id.* ¶¶ 164–165).  And they have experienced heightened anxiety and an increasing number of spam calls, texts, and e-mails.  (*E.g.*, *id.* ¶¶ 167–168).  On the last point, Plaintiff Diane Edwards elaborates that she has been "flooded with [] calls, typically from the same woman who refers to herself as 'Ashley,' that refer to [] Edwards specifically by name and attempt to discuss enrolling in college or completing paperwork for a loan she did not apply for."  (*Id.* ¶ 192).

Plaintiffs bring claims against Defendant for negligence or negligence per se (Count I), breach of implied contract (Count II), and unjust enrichment (Count III).  (*See generally id.*).  Defendant moves to dismiss for lack of subject matter and failure to state claims on which relief can be granted.  (*See generally* Doc. 22).

## II.     LEGAL STANDARD

### A.     Subject Matter Jurisdiction

A party may move to dismiss the claims against it for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'"  *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919

F.2d 1525, 1529 (11th Cir. 1990)).  "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion."  *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).  "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits."  *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).  "When jurisdiction is properly challenged, a plaintiff has the burden of showing jurisdiction exists."  *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl, 2008 WL 276030, at *2 (M.D. Fla. Jan. 31, 2008).

**B.     Failure to State a Claim**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550

4

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.    DISCUSSION

Defendant facially attacks Plaintiffs' standing to sue and argues that Plaintiffs fail to state any claims for relief.  The Court first considers the "threshold jurisdictional question" of "[w]hether plaintiffs have standing to sue."  *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021).

### A.    Standing

"The Constitution limits the jurisdiction of the federal courts to actual cases or controversies."  *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1365 (11th Cir. 2017) (citing U.S. Const. art. III, § 2).  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue."  *Id.* at 1365–66 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  "Under settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it."  *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  These elements must be established for each claim pleaded and each form of relief sought, *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021), and must be supported by the degree of evidence required at the relevant stage of the litigation, *Lujan*, 504 U.S. at 561.

"The foremost standing requirement is injury in fact.  An injury in fact consists of an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Trichell*, 964 F.3d at 996 (quotations omitted); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). "[I]dentity theft and damages resulting from such theft" are actual and concrete Article III injuries.  *Huang v. Equifax Inc.* (*In re Equifax Inc. Customer Data Sec. Breach Litig.*), 999 F.3d 1247, 1262 (11th Cir. 2021).  Consistent with general principles of standing, a plaintiff who sufficiently alleges a "substantial risk" or "certainly impending" threat of identity theft can also establish a concrete injury.  *Tsao*, 986 F.3d at 1345; *see also In re Equifax*, 999 F.3d at 1263 n.10 (declining to undertake "claim-by-claim analysis" of plaintiffs' injuries "because . . . all [p]laintiffs [] adequately alleged a sufficient risk of identity theft"). Moreover, "when a plaintiff faces a sufficient risk of harm, the time, money, and effort spent mitigating that risk are also concrete injuries."  *In re Equifax*, 999 F.3d at 1262.

To establish that a substantial risk or certainly impending threat of identity theft, a plaintiff whose personal information has been stolen in a data breach typically must offer "specific" allegations of "*some* misuse of class members' data."  *Tsao*, 986 F.3d at 1344; *see also Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023).  In contrast, "conclusory allegations of an 'elevated risk of identity theft . . . [are] simply not enough'" to establish an Article III injury.  *Tsao*, 986 F.3d at 1343 (alteration in original) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 933 (11th Cir. 2020)). Vague allegations of unauthorized charges or suspected dark web activity are similarly insufficient.  *Id.*; *DiPierro v. Fla. Health Scis. Ctr., Inc.*, 737 F. Supp. 3d 1314, 1324–25 (M.D. Fla. 2024).

Plaintiffs Overshown, Crist, and Edwards have alleged facts supporting a cognizable injury or imminent risk thereof. Specifically, Overshown alleges that his Private Information was leveraged to levy an unauthorized and unrecoverable $500 charge to his bank account shortly after the data breach. This "traditional . . . monetary harm[]" "readily qualif[ies] as [a] concrete injur[y] under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Green-Cooper*, 73 F.4th at 897 (Branch, J., concurring in part). Even if it did not, the same allegation would plausibly suggest misuse of Overshown's Private Information. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *5 (M.D. Fla. Aug. 25, 2021). And contrary to Defendant's arguments, it is not too vague or conclusory to support standing at this stage of the proceedings, as Overshown has not "fail[ed] to include any factual specificity regarding the date or nature of [the harm] . . . or the monetary value associated with [the] purported misuse of [his] information." *Tsao v. Captiva MVP Rest. Partners, LLC*, No. 8:18-cv-1606-T, 2018 WL 5717479, at *2 (M.D. Fla. Nov. 1, 2018).

Crist alleges that unauthorized credit inquiries were made in his name in July 2025. He does not allege that his score decreased as a result, nor does he identify the type of inquiry performed. *Cf. In re Equifax*, 999 F.3d at 1263 (finding an injury where dozens of plaintiffs alleged that they "incurred specific numerical drops in their credit scores"); *Baker v. Akumin Corp.*, No. 0:23-CV-62396, 2024 WL 1931480, at *4 (S.D. Fla. Apr. 16, 2024) (finding allegations of lowered credit scores to be "no less conclusory than the allegation in *Tsao* that class members had unauthorized charges on their . . . accounts" (quotation marks omitted)). That the inquiries were unauthorized is nonetheless sufficient to plausibly suggest misuse of his data or the imminent risk thereof. *See Desue v. 20/20*

7

*Eye Care Network, Inc.*, No. 21-CIV-61275, 2022 WL 796367, at *5 (S.D. Fla. Mar. 15, 2022).

Edwards alleges that her "Private Information has already been misused, evidenced by multiple notifications [she] has received since early 2025 informing her that her Private Information was found published on the dark web." (Doc. 36, ¶ 187). Edwards fails to specifically identify the data published or the "specific dark web marketplace" on which it was found. *DiPierro*, 737 F. Supp. 3d at 1324. At this stage of the proceedings, however, the Court finds it sufficient for Edwards to allege that her Private Information has been published on the dark web and thus misused. *Cf. Berry v. Refresco Beverages US Inc.*, No. 8:23-cv-2763, 2025 WL 2577197, at *5–6 (M.D. Fla. June 11, 2025), *report & recommendation adopted*, 2025 WL 2247152 (M.D. Fla. Aug. 7, 2025).

Because Overshown, Crist, and Edwards have alleged concrete injuries or a sufficient risk thereof, "the time, money, and effort [they] spent mitigating that risk are also concrete injuries." *In re Equifax*, 999 F.3d at 1262. And because they plausibly allege that their mitigation efforts and other forms of harm will continue into the future, their injuries support standing to seek both damages and equitable relief. *See Green-Cooper*, 73 F.4th at 889–90; *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).

Plaintiffs attempt to extend this principle even further, arguing that the factual allegations of Overshown and Crist establish that all named Plaintiffs face an imminent risk of identity theft. The Court is doubtful,[2] but need not entertain the argument at this

---

[2] In *In re Equifax*, the Eleventh Circuit found that where "dozens of Plaintiffs allege they have already had their identities stolen and [] suffered injuries" such as having "numerous unauthorized charges and accounts made in their name; incur[ing] specific numerical drops in their credit scores; [and having] their ability to obtain loans affected," all plaintiffs were able to allege a risk of identity theft sufficient to satisfy Article III. 999

juncture. "Where [multiple] plaintiffs seek to proceed as a class, only one named plaintiff for each proposed class needs to have standing for a particular claim to advance" past the motion to dismiss stage. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). Conversely, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) (quotation omitted). Thus, while several of the named Plaintiffs in this action offer only vague, conclusory, or speculative allegations of identity theft or misuse of their Private Information, an "individualized analysis of standing and harm is more appropriate at the class certification stage." *Cravens v. Garda CL Se., Inc.*, No. 24-CV-80400, 2024 WL 5058304, at *5 n.3 (S.D. Fla. Dec. 9, 2024) (citing *Green-Cooper*, 73 F.4th at 888; *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019)).

In addition to injuries, at least Overshown, Crist, and Edwards have alleged facts sufficient to show causation and redressability. Causation "requires that the plaintiff's injuries be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (quoting *Lujan*, 504 U.S. at 560). Redressability

---

F.3d at 1262–63. Here, the allegations of actual identity theft are far more constrained, which limits the inference that all named plaintiffs are at risk of a certainly impending injury. Moreover, neither *In re Equifax* nor any other Eleventh Circuit case dispenses with the requirement that standing not be dispensed in gross, even in class actions. *See DiPierro*, 737 F. Supp. 3d at 1324. Rather, "[a] named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482–83 (11th Cir. 1987)).

requires "that it be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). "[C]ausation and redressability are usually flip sides of the same coin," in that, "[i]f a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (quotations omitted).

Defendant argues that data breach cases require a more robust showing of causation than may be provided by allegations of time and sequence. Defendant also argues that Plaintiffs fail to rule out the possibility that other sources of harm could have caused their alleged injuries. For these propositions Defendant cites to the Rule 12(b)(6) proximate cause analysis in *Allgood v. PaperlessPay Corp.*, No. 3:20-cv-516, 2022 WL 846070, at *9 (M.D. Fla. Mar. 22, 2022), and to *DiPierro*, 737 F. Supp. 3d at 1330. Both are inapposite.

For the purposes of Article III, "[a] showing that an injury is fairly traceable requires less than a showing of proximate cause. Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Resnick*, 693 F.3d at 1324 (quotation omitted). Moreover, the Court's analysis of causation at the Rule 12(b)(1) stage is "fairly lenient," *Allgood*, 2022 WL 846070, at *7, such that "general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing," *Resnick*, 693 F.3d at 1323 (quotation omitted). Here, Overshown, Crist, and Edwards all allege that their carefully guarded Private Information was misused because of a data breach caused by Defendant's negligent conduct. (*See,*

10

*e.g.*, Doc. 36, ¶¶ 175, 187, 224).  Though these allegations are conclusory, the Court finds them sufficient at this preliminary and "fairly lenient" stage.  *Allgood*, 2022 WL 846070, at *7.  Perhaps this finding would differ at a later stage of the proceedings, as in *DiPierro*, 737 F. Supp. 3d at 1317.  Insofar as Plaintiffs fail to address or rule out other potential sources of their alleged harms, the problem lies with Rule 12(b)(6), at least to the extent their claims require proximate causation—a more demanding showing than that of Article III causation.  *See Resnick*, 693 F.3d at 1324.

## B.    Failure to State a Claim

Plaintiffs bring claims for negligence or negligence per se, breach of implied contract, and unjust enrichment under Florida law.  "Negligence claims are comprised of four elements: duty, breach, causation, and damages."  *Ruth v. Guerrieri Mgmt., Inc.*, 397 So. 3d 781, 785 (Fla. 5th DCA 2024).  "[A]n action for negligence *per* se requires a plaintiff to show 'violation of a statute which establishes a duty to take precautions to protect a particular class of persons from a particular[] injury or type of injury.'"  *Resnick*, 693 F.3d at 1325 (quoting *Davis v. Otis Elevator Co.*, 515 So. 2d 277, 278 (Fla. 5th DCA 1987)).

As an initial matter, Plaintiffs invoke the Health Insurance Portability and Accountability Act ("**HIPPA**"), 42 U.S.C. § 1320d *et seq.*, and § 5 of the Federal Trade Commission Act ("**FTC Act**"), 15 U.S.C. § 45, as the statutory foundations of their negligence per se claim.  These statutes do not establish legally cognizable duties under Florida law.  As Defendant notes, "Florida courts have refused to recognize a private right of action for negligence per se based on an alleged violation of a federal statute that does not provide for a private right of action."  *Stevens v. Danek Med., Inc.*, No. 95-14293-CIV, 1999 WL 33217282, at *5 (S.D. Fla. Apr. 16, 1999).  And neither HIPPA nor the FTC Act

provide litigants with an express or an implied private right of action.  *See Gilbert v. BioPlus Specialty Pharmacy Servs., LLC*, No. 6:21-cv-2158, 2023 WL 3555006, at *2 (M.D. Fla. Mar. 3, 2023) (citing *Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.*, 195 F. App'x 891, 894 (11th Cir. 2006); *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809 (11th Cir. 2011)).  Plaintiffs therefore fail to state a claim for negligence per se.

To the extent that Plaintiffs allege negligence, Defendant argues that Florida law demands a showing of bodily injury or property damage to satisfy the damages element. But this principle has a name—the economic loss rule—and the Florida Supreme Court has expressly limited its "application . . . to products liability cases."  *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 407 (Fla. 2013).  In other words, "outside of the products' liability context, a plaintiff may sue in tort for purely economic damages unaccompanied by any injury to a person or other property."  *Jerue v. Drummond Co., Inc.*, No. 8:17-cv-587-T, 2017 WL 10876737, at *3 (M.D. Fla. Aug. 17, 2017) (quotation omitted); *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1224 (S.D. Fla. 2022).  Plaintiffs' allegations of damages therefore suffice.

Defendant next argues that Plaintiffs fail to sufficiently allege that it had any duty with respect to their Private Information.  Defendant argues that no circumstances warrant the imposition of a legal duty, as Plaintiffs fail to allege that a contractual provision, statute, or special relationship created one.  Citing *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004), Defendant argues that a legal duty is not established "merely because the harm in question was foreseeable."  However, that is because "the defendant's conduct must 'create' the risk" of harm, *id.*, which is what Plaintiffs here allege.  Therefore, as an "entit[y] that collect[s] sensitive, private data from consumers and store[s] that data

on [its] networks," Defendant "ha[s] a duty to protect that information" from foreseeable harms created by its allegedly negligent storage of the data. *Gilbert*, 2023 WL 3555006, at *1 (quotation omitted).

Defendant also argues that Plaintiffs fail to allege causation. Plaintiffs first respond by citing *Chirillo v. Granicz*, 199 So. 3d 246, 249 (Fla. 2016), for the proposition that, in Florida, "proximate cause is a fact-specific assessment by the jury." But this generalized statement concerned analysis of foreseeability at the summary judgment stage and was later hedged by the *Chirillo* court. *Id.* at 252; *see also McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992) (holding that a directed verdict is improper "where reasonable persons could differ as to whether the facts establish proximate causation—i.e., whether the *specific* injury was genuinely foreseeable"). In any event, that "breach, causation, and damages are ordinarily questions for the jury" in Florida Courts, *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204–05 (Fla. 2007), does not revoke Plaintiffs' burden to state claims on which relief can be granted. *See Resnick*, 693 F.3d at 1326–28 (analyzing proximate causation under Rule 12(b)(6) for negligence claim based on Florida law).

"Generally, to [suggest] that a data breach *caused* identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence. . . . Plaintiffs' pleadings must indicate a logical connection between the two incidents." *Id.* at 1326–27. Alleging a logical connection can be a relatively modest hurdle. Still, Plaintiffs fail to clear it.

First, Plaintiffs make little effort to connect their allegedly compromised Private Information to the harms they suffered. To recap, Plaintiffs allege that they were "generally inform[ed]" that Defendant's network was "accessed between December 13,

2024, and December 21, 2024," and that the same network "contained some of [Plaintiffs'] personal information and/or protected health information as described in more detail below." (Doc. 36, ¶ 43). However, the additional details are not supplied by any Plaintiff. Instead, Plaintiffs blanketly allege that "their full names, dates of birth, driver's license numbers, Social Security numbers, financial and banking information including account and routing numbers, digital signatures, medical information, health insurance information, and other sensitive data" were stolen. (*Id.* ¶ 2). They then label this data, collectively, as their "Private Information" and allege various harms connected to its "misuse" without ever alleging how the misuses occurred or what pieces of Private Information were involved. (*E.g.*, *id.* ¶ 224). Taking all inferences in Plaintiffs favor, it is easy enough to assume that, for instance, Overshown's fraudulent charge was connected to the theft or compromise of his banking information. Yet he does not specifically allege that, nor does he allege that Defendant's notice letter informed him that his banking information was even stolen. By themselves, these gaps in pleading do not yet plunge his claims below plausibility. *See Resnick*, 693 F.3d at 1327. But they are illustrative of just some of the inferences and speculation required by all Plaintiffs' allegations.

Further clouding the plausibility of Plaintiffs' negligence claim are their conclusory allegations regarding the theft of their Private Information. Specifically, Plaintiffs allege that their Private Information was stolen but fail to "allege enough *facts* to permit the Court to infer that [it] actually was stolen." *Allgood*, 2022 WL 846070, at *10 (emphasis added). Some allegations even support a countervailing inference, as Defendant notified Plaintiffs only that their Private Information was housed on a network accessed by an unauthorized actor. (Doc. 36, ¶ 43). But Defendant's notice letter, as it was reproduced in the

14

Consolidated Class Action Complaint, did not notify Plaintiffs that any of their Private Information had actually been stolen. (*Id.*). Therefore, this case is similar to *Allgood*, where plaintiffs were notified that "an unauthorized individual entered the [Defendant's] server . . . and possibly staged an exfiltration," but nonetheless alleged that their data was, in fact, "exfiltrated from [the defendant's] servers." 2022 WL 846070, at *3; *see also DiPierro*, 737 F. Supp. 3d at 1329–30.

The logical connection between Plaintiffs' harms and Defendant's December 2024 data breach only continues to blur from there. While all Plaintiffs allege that they carefully safeguard their Private Information, no Plaintiff alleges that this is the first time his or her Private Information has been compromised. *Cf. Resnick*, 693 F.3d at 1326–27 (noting that plaintiffs "had [n]ever had . . . their sensitive information compromised" and stating that if plaintiffs had "alleged fewer facts, we doubt [] the Complaint could have survived a motion to dismiss" (quotation marks omitted)); *Allgood*, 2022 WL 846070, at *10; *DiPierro*, 737 F. Supp. 3d at 1331 (discussing Article III causation). As a result, there are "obvious alternative explanation[s]" for Plaintiffs' alleged harms. *Twombly*, 550 U.S. at 567. The most obvious is another data breach. As Defendant notes, Plaintiffs allege that virtually everyone in the United States has been victimized by a data compromise and otherwise describes data breaches as ubiquitous, increasing in number, and even unavoidable. (Doc. 36, ¶¶ 53–58). Accordingly, it is just as "possible that [] bad actors obtained [Plaintiffs'] information before, or . . . wholly apart from, [Defendant's] Data Breach." *Allgood*, 2022 WL 846070, at *11. Likewise, the pleading defects surrounding the alleged theft of Plaintiffs' Private Information leave it equally "possible that the bad actor was unsuccessful in exfiltrating any data at all." *Id.* Some allegations affirmatively support

this possibility.  For instance, all Plaintiffs complain of experiencing upticks in spam communications, but all fail to allege that their phone numbers or e-mail addresses were compromised in Defendant's data breach.  Instead, Plaintiffs appear to concede that these "unregulated data [are] available elsewhere."  (Doc. 36, ¶ 114; *see also id.* ¶ 115).

That some Plaintiffs have suffered harms consistent with a data breach is, at best, "merely consistent with" the possibility that the harms stemmed from Defendant's data breach.  *Twombly*, 550 U.S. at 557.  That some Plaintiffs have suffered harms consistent with a data breach does not, however, "plausibly suggest[]" that their harms originated from Defendant's data breach, much less its conduct with regard to implementing security measures.  *Id.*  Because Plaintiffs' only well-pleaded allegations of a nexus between their harms and Defendant's data breach are time and sequence, and because Plaintiffs' well-pleaded allegations of a nexus between their harms and Defendant's negligent actions are even more tenuous, Plaintiffs fail to state a claim for negligence.  Count I will be dismissed accordingly.

Plaintiffs likewise fail to state a claim for breach of implied contract.  Under Florida law, "[t]he only distinction between an express and implied-in-fact contract is the manner in which the parties' assent is manifested or proven."  *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010).  "A contract based on the parties' words is characterized as express, whereas, a contract based on the parties' conduct is said to be implied in fact."  *Id.*  Therefore, Plaintiffs' breach of implied contract claim "also require[s] a showing of causation" because "[i]n Florida, a breach of contract claim requires a party to show that *damages resulted from* the breach."  *Resnick*, 693 F.3d 1317, 1325 (11th Cir. 2012) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)).  Additionally, like

express contracts, "contracts implied in fact . . . require the assent of the parties." *Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So. 2d 15, 17 (Fla. 2d DCA 1991).

Apart from sufficiently alleging causation, Plaintiffs thus need to allege facts showing conduct between the parties manifesting an intent to enter into an agreement in which Defendant would safeguard Plaintiffs' Private Information in exchange for some form of consideration. *See In re Mednax Servs.*, 603 F. Supp. 3d at 1221–22. Defendant argues that Plaintiffs fail to do so, and the Court agrees. Rather than alleging facts suggesting that the parties mutually assented to a bilateral agreement concerning the safekeeping of Plaintiffs' Private Information, Plaintiffs allege legal conclusions and argue that formation occurred simply because they provided Defendant with their Private Information. (*E.g.*, Doc. 36, ¶ 303 ("A meeting of the minds occurred when Defendant required Plaintiffs and the Class Members to provide their Private Information . . . .")). But Plaintiffs' "[u]nilateral and subjective expectations" of some undefined level of sufficient data security "cannot be inferred to coalesce into the meeting of the minds required to establish an implied contract." *In re Mednax Servs.*, 603 F. Supp. 3d at 1221 n.20. Plaintiffs therefore fail to state a claim for breach of implied contract because their "allegations reveal only that they provided their personal information as required to receive healthcare services from Defendants—not data security services beyond the privacy requirements already imposed on Defendants by federal law." *Id.* at 1221.

Plaintiffs' claim for unjust enrichment requires factual allegations suggesting "1) the plaintiff[s] conferred a benefit on the defendant, who has knowledge of the benefit, 2) the defendant accepts and retains the conferred benefit, and 3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it." *Duncan*

17

*v. Kasim, Inc.*, 810 So. 2d 968, 971 (Fla. 5th DCA 2002).  Defendant argues that Plaintiffs fail to sufficiently plead that a benefit was conferred or retained.  Plaintiffs, however, allege that they conferred "payment[s] and their Private Information" to Defendant, that "[t]he monies . . . paid . . . included a premium for Defendant's cybersecurity obligations," and that "Defendant enriched itself . . . at Plaintiffs' and Class Members' expense by utilizing cheap[], ineffective security measures and diverting [Plaintiffs'] funds to Defendant's own coffers."  (Doc. 36, ¶¶ 312, 315, 317).  As Plaintiffs argue, these allegations are indistinguishable from those in *Resnick*, 693 F.3d at 1328, where the Eleventh Circuit found an adequate claim to be pleaded under Florida law.  The Court is compelled to follow suit.  *See Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1451 (11th Cir. 1991) ("Tom's argues that the *Novatel* opinion is based upon an erroneous interpretation of Georgia law, but we are bound by that decision as circuit precedent.").  Plaintiffs thus state a claim for unjust enrichment.

"A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."  *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).  Here, while Plaintiffs fail to request leave to amend the Consolidated Class Action Complaint, the Court finds that a more carefully drafted pleading might state claims for negligence or breach of implied contract.  Therefore, in its discretion, the Court will dismiss Counts I and II without prejudice and allow Plaintiffs to attempt to correct the deficiencies noted herein.  *See* Fed. R. Civ. P. 15(a)(2).  Plaintiffs, however, shall not replead a claim for negligence per se as part of an amended Count I.

18

IV.   **CONCLUSION**

For the reasons stated herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Consolidated Class Action Complaint (Doc. 41) is **GRANTED in part** to the extent provided herein and **DENIED** in all other respects.

2. Counts I and II of the Consolidated Class Action Complaint (Doc. 36) are **DISMISSED without prejudice**.

3. Plaintiffs may file an amended pleading to correct the deficiencies noted herein with respect to Counts I and II on or before **June 9, 2026**.  Failure to timely file an amended pleading in compliance with this Order will result in Counts I and II being dismissed with prejudice.

**DONE AND ORDERED** in Jacksonville, Florida on May 29, 2026.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

19